# FEDERAL COURT REMOVAL

# EXHIBIT A



## Service of Process Transmittal Summary

**TO:**   Non Employee Litigation Target
Target Corporation
1000 NICOLLET MALL
MINNEAPOLIS, MN 55403-2542

**RE:**   **Process Served in Minnesota**

**FOR:**   Target Corporation  (Domestic State: MN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: SELINA HILL-HORSE, individually and on behalf of all others similarly situated // To: Target Corporation |
| **CASE #:** | None Specified |
| **NATURE OF ACTION:** | Personal Injury |
| **PROCESS SERVED ON:** | C T Corporation System, Inc., Saint Paul, MN |
| **DATE/METHOD OF SERVICE:** | By Process Server on 05/17/2024 at 13:09 |
| **JURISDICTION SERVED:** | Minnesota |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/17/2024, Expected Purge Date: 05/22/2024 |
| | Image SOP |
| | Email Notification,  Non Employee Litigation Target  gl.legal@target.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System, Inc. |
| | 1010 Dale Street N |
| | Saint Paul, MN 55117 |
| | 877-564-7529 |
| | MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

 Wolters Kluwer

## PROCESS SERVER DELIVERY DETAILS

**Date:**                               Fri, May 17, 2024
**Server Name:**                        Drop Service

| Entity Served | TARGET CORPORATION |
|---|---|
| Case Number | |
| Jurisdiction | MN |

| Inserts | | |
|---|---|---|
| | | |



Case Type:

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                          FOURTH JUUDICIAL DISTRICT

---

Selina Hill-Horse, individually and on
behalf of all others similarly situated,

Plaintiff,

v.                                                    **SUMMONS**

Target Corporation and Target Brands,
Inc.,                                                 Court File Number:

Defendants.

---

THIS SUMMONS IS DIRECTED TO: Target Corporation and Target Brands, Inc.

1. **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons **a written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

   Schwebel Goetz & Sieben
   5120 IDS Center
   80 S. 8th Street
   Minneapolis, MN 55402

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

I hereby acknowledge that sanctions may be awarded pursuant to Minn. Stat. § 549.211.

Dated: May 17, 2024

Respectfully submitted,

**SCHWEBEL GOETZ & SIEBEN, P.A.**
*/s/ Alicia N. Sieben*
Alicia N. Sieben (#389640)
5120 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2246
Telephone: 612-377-7777
asieben@schwebel.com

W. Lewis Garrison, Jr. *(pro hac forthcoming)*
Christopher Hood *(pro hac forthcoming)*
Mark Ekonen *(pro hac forthcoming)*
**HENINGER GARRISON DAVIS, LLC**
2224 1st Avenue N
Birmingham, Alabama 35203
Tel: (205) 326-3336
Fax: 205-380-8085
Lewis@hgdlawfirm.com
CHood@hgdlawfirm.com
Mark@hgdlawfirm.com

Richard M. Paul III *(pro hac forthcoming)*
Ashlea G. Schwarz *(pro hac forthcoming)*
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com

**Attorneys for Plaintiff and Proposed Class**

| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| SELINA HILL-HORSE, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | **COMPLAINT** |
| v. | |
| TARGET CORPORATION and TARGET BRANDS, Inc., | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Selina Hill-Horse brings this class action lawsuit on behalf of herself and others similarly situated throughout the State of Texas and the United States against Defendant Target Corporation and Defendant Target Brands, Inc. (collectively "Target" or "Defendant").

## INTRODUCTION

1.    Plaintiff brings these claims to redress the economic harms caused by Defendant's sale of acne treatment drug products containing benzoyl peroxide ("BPO") without warning consumers that (1) the BPO in the products is at high risk of degrading, and in fact degrades, into benzene under normal use, handling, and storage conditions, and (2) said products contain benzene, which is a well-known human carcinogen.

1

2.    Defendant is one of the nation's largest retailers who sells not only third-party products but also products under a number of brands which it owns. One such brand is Up & Up. Under the Up & Up brand, Defendant offers several products containing BPO, including: Acne Spot Treatment .75 oz and Max. Strength Acne Medication 1 oz (collectively the "Products" or "BPO Products").

3.    The Products are used to treat acne vulgaris ("Acne") and are formulated with BPO, along with other inactive ingredients, to make acne treatment creams, washes, scrubs, and bars. Before being sold to the public, the Products must be made in conformity with current good manufacturing practices and must conform to quality, safety, and purity specifications. The Products offered for sale did not.

4.    The Products should not contain benzene, nor degrade into benzene, except under extraordinary circumstances.[1]

5.    Throughout this Complaint, references to federal law and FDA regulation are merely to provide context and are not intended to raise a question of federal law. All claims alleged arise out of violations of state law, which in no way conflict, interfere with, or impose obligations that are materially different than those imposed by federal law.

---

[1] *See* Food and Drug Administration, *Q3C – Tables and List Guidance for Industry* at p. 5, https://www.fda.gov/media/71737/download ("Solvents in Class 1 (Table 1) should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicity or their deleterious environmental effect. However, if their use is unavoidable in order to produce a drug product with a significant therapeutic advance, then their levels should be restricted as shown in Table 1, unless otherwise justified."). Per the FDA's guidance, the amount of benzene in a product should be less than 2 parts per million. *Id.*

2

6.     All the BPO Products marketed and sold by the Defendant decompose into benzene rendering them materially different than advertised in that they contain unsafe levels of benzene.

7.     Benzene is a known human carcinogen. There is a well-established consensus within the medical and scientific community that benzene exposure, even in low amounts, increases the risk of blood cancers and other adverse effects.

8.     Despite the fact that the Products contain high levels of benzene, Defendant has never listed benzene among the ingredients or anywhere on the Products' labels, containers, advertising or on its websites. Defendant never even warned that the Products were at risk of benzene contamination. This is, of course, unsurprising, as such a disclosure would have devastated the sales of the Products.

9.     Defendant, as developer, manufacturer, and/or distributor of the Products knew or should have known that the Products contain and/or degraded into benzene when exposed to expected consumer use, handling, and storage conditions. Though not commonly known or understood by consumers, such as Plaintiff, BPO has long been known and understood within the scientific community to degrade into benzene.[2]

10.     Defendant knew or should have known that the BPO used in its products would degrade into benzene.

---

[2] Erlenmeyer, H. and Schoenauer, W. (1936), Über die thermische Zersetzung von Di-acyl-peroxyden.     HCA,     19:     338-342.     https://doi.org/10.1002/hlca.19360190153 (https://onlinelibrary.wiley.com/doi/10.1002/hlca.19360190153)

3

11.     Defendant misled Plaintiff, the Class, the Subclass, and the public by representing the Products only had the ingredients listed and—by omission—did not contain benzene.

12.     Defendant also misled Plaintiff, the Class, the Subclass, and the public by representing the Products were safe while concealing material health and safety information known to them, primarily that the Products either contained benzene or would degrade to benzene under normal consumer conditions.

13.     Defendant further misled Plaintiff, the Class, the Subclass, and the public by giving the Products long expiration dates of 2-3 years, affirming to consumers that the Products were safe for use for years, when Defendant knew or should have known that the BPO in the products would degrade into benzene far sooner than that.

14.     Defendant's statements and omissions of material health and safety information unreasonably placed Plaintiff, the Class, the Subclass, and the public at risk of exposure to benzene without their knowledge and consent. Defendant's statements about the Products were not only false and misleading, but they were also blatantly and intentionally deceptive.

15.     As a result of Defendant's misconduct and consumer deception, the Plaintiff, the Class, the Subclass, and the public have been economically harmed, as they purchased a product—one containing a deadly human carcinogen—that they otherwise would never have purchased.

4

16.     This Class Action is necessary to redress harms caused to Plaintiff, the Class, and Subclass members who bought the BPO Products, believing them to be safe and only containing the ingredients listed on the Products' labels, containers, advertisements, and on Defendant's websites. This Class Action is further necessary to expose Defendant's ongoing consumer fraud and enjoin Defendant's continuing misconduct and deception to protect the public.

17.     Plaintiff brings this Class Action on behalf of herself, and on behalf of those similarly situated, and seeks to represent a National Class of Consumers who purchased Defendant's BPO Products as well as a Subclass of Consumers from Texas. Plaintiff seeks damages, reasonable attorneys' fees and costs, interest, restitution, other equitable relief, including an injunction and disgorgement of all benefits and profits Defendant received through its misconduct.

## PARTIES

18.     Plaintiff Selina Hill-Horse, an adult resident of Tarrant County, Texas, purchased the BPO Products—including Max. Strength Acne Medication 1 oz—in Texas for many years, including within the last year. She has suffered economic damages as a result of Defendant's breaches and wrongful conduct, as alleged, including (but not limited to) its violations of the consumer protection laws alleged herein. Plaintiff Hill-Horse never would have purchased Defendant's BPO Products had Defendant warned about the presence of benzene or that its products could degrade into benzene.

5

19.     Defendant Target Corporation is a citizen of Minnesota, with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. Defendant Target Corporation may be served via its registered agent at 1010 Dale Street N, St. Paul, Minnesota 55117.

20.     Defendant Target Brands, Inc. is a citizen of Minnesota, with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. Defendant Target Brands, Inc. may be served via its registered agent at 1010 Dale Street N, St. Paul, Minnesota 55117.

21.     Defendant offers several products containing BPO including: Acne Spot Treatment .75 oz and Max. Strength Acne Medication 1 oz. At all relevant times, Defendant conducted business and derived substantial revenue from its manufacturing, advertising, marketing, distributing, and selling of the Products within the State of Minnesota and in this District.

22.     Defendant and its agents promoted, marketed, and sold the BPO Products nationwide including within Minnesota, Texas, and in this District. The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products were prepared and/or approved by Defendant and its agents and were disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations alleged and disseminated uniformly through advertising, packaging, containers, websites, and social media.

6

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this matter under Minn. Stat. §484.01, subd. 1.

24.     This action is not removable to federal court because Plaintiff asserts no claim arising under the Constitution, law, or treaties of the United States to satisfy 28 U.S.C. §1331 and because even though the requirements of 28 U.S.C. §1441(b)(2) may be met, Plaintiff brings this action in Defendant's home state and therefore 28 U.S.C. §1441(b)(2) precludes removal.

25.     Venue is proper in Hennepin County, Minnesota under Minn. Stat. §§ 542.01 and 542.09 because Defendant resides in Hennepin County in that it has its principal place of business in Hennepin County.

## GENERAL ALLEGATIONS

### A.     Benzene Is a Deadly Carcinogen with No Safe Exposure Level.

26.     Benzene is a carcinogen that has been among the most studied toxins over the last 100 years due to its wide use during the industrial revolution, extreme danger, and known ability to cause cancer and death in humans and animals. The medical literature linking benzene to blood cancers is vast, dating to the 1930s.[3]

---

[3] See Hamilton A., *Benzene (benzol) poisoning*, ARCH PATHOL, (1931):434-54, 601-37; Hunter FT, *Chronic exposure to benzene (benzol). Part 2: The clinical effects.* J. IND. HYG TOXICOL, (1939):21 (8) 331-54; Mallory TB, et al., *Chronic exposure to benzene (benzol).Part 3:The pathological results.* J. IND. HYG TOXICOL,(1939):21 (8) 355-93; Erf LA, Rhoads CP., *The hematological effects of benzene (benzol)*

27.    Benzene has no known safe level of exposure. Benzene causes central nervous system depression and destroys bone marrow, leading to injury in the hematopoietic system. The International Agency for Research on Cancer ("IARC") classifies benzene as a "Group 1 Carcinogen" that causes cancer in humans, including acute myelogenous leukemia ("AML"). AML is the signature disease for benzene exposure with rates of AML particularly high in studies of workers exposed to benzene.

28.    Benzene exposure is cumulative and additive. There is no safe level of exposure to benzene, and all exposures constitute some risk in a linear, if not supralinear, and additive fashion. According to the FDA, benzene in small amounts over long periods of time can decrease the formation of blood cells and long-term exposure through inhalation, oral intake, and skin absorption may result in cancers such as leukemia and other, potentially life threatening, blood disorders.

29.    In 2022, the FDA issued a safety alert warning manufacturers of the risk of benzene contamination in certain products and components.[4] The FDA warned manufacturers that if any product or component was subject to deterioration, manufacturers must have re-testing procedures in place to ensure continued purity and stability of the degradable components. If any product in circulation was found to have

---

poisoning. J. IND. HYG TOXICOL, (1939):21 421-35; American Petroleum Institute, *API Toxicological Review: Benzene,* NEW YORK, (1948); Infante PF, Rinsky RA, Wagoner JK, et al., *Leukemia in benzene workers,* LANCET, (1977);2 (8028): 76-78.

[4] Federal Drug Administration. (Dec. 22, 2022). *FDA Alerts Drug Manufacturers to the Risk of Benzene in Certain Drugs.*

benzene over 2 ppm, the FDA directed that drug manufacturers contact the FDA to discuss a voluntary recall.

30.    To date, none of the Defendant's Products containing BPO have been recalled due to benzene contamination.

**B.    Defendant's Products Containing BPO.**

31.    Defendant is a manufacturer in the business of selling skin care products, including many products designed to treat acne.

32.    Defendant sells several acne treatment products, including many products containing BPO, such as Persa-Gel 10; Rapid Clear Stubborn Acne Spot Gel; Clear Pore Cleanser/Mask; On-the-Spot Acne Treatment; Stubborn Acne & Stubborn Marks Treatment Bundle; and Stubborn Acne AM Treatment.

**C.    Defendant's Marketing of Its BPO Products.**

33.    Defendant's Products are widely marketed, available, sold, and used by children, teenagers, and adults throughout the United States and the world. The acne treatment industry is a multi-billion-dollar market. In order to remain competitive and relevant within this industry, Defendant spends millions of dollars promoting its Products directly to consumers, including younger consumers, such as teenagers. Defendant makes use of social media sites to promote its Products.

34.    Defendant makes promises to consumers to influence their purchasing decisions such as affirming the Products are tested, backed by science, and approved by

9

dermatologists. Defendant told consumers they should buy its Products because Defendant is a market leader and acne expert. Defendant portrays itself as caring about consumers, the environment, and warrants that it only sells safe and tested Products.

35.    Defendant, through its Clean & Clear brand describes itself as a "brand that listens" to its consumers and that it is "constantly working to improve skin care through technology, innovation, and new and improved formulas."[5] It also touts its "65+ years of skincare experience," describes itself as an "industry leader . . . playing an active role in the evolution of skincare."[6]

36.    Defendant, through its Neutrogena brand, touts its scientific expertise, stating that "we rely on our scientists, dermatologists and skin experts to create inclusive products that meet all unique needs, so you can always find science-backed skin care that's right for you."[7] Defendant promises that "[a]ll our ingredients are carefully selected to be safe . . . ."[8]

## D.    Defendant's Products Contain Impermissible Levels of Benzene.

37.    In 2023, Valisure tested a representative sample of BPO and non-BPO products and found that the BPO Products had dangerous levels of benzene, many multiple times higher than allowed.[9] Valisure tested the Products at temperatures

---

[5] https://www.cleanandclear.com/about-clean-clear (last accessed 3/21/2024).
[6] Id.
[7] https://www.neutrogena.com/navigation/about/about-us.html (last accessed 3/21/2024).
[8] Id.
[9] Valisure's FDA Citizen's Petition on Benzoyl Peroxide (March 6, 2024).

common during consumer use, handling, and storage.[10] Valisure's testing revealed benzene levels as high as 1600 parts per million (ppm).[11] Even more alarming, Valisure also found that benzene was released into the surrounding air even when the Products' packaging was closed, raising concerns for inhalation exposure. In the non-BPO products tested by Valisure, benzene was not present, even at trace levels.

38.     As a result of their testing, Valisure filed an FDA citizen's petition on March 5, 2024, demanding an immediate recall of products containing BPO.

39.     The high levels of benzene found in BPO acne treatment products as well as research in academic literature dating back to 1936 demonstrating that BPO can degrade directly into Benzene, led Valisure to conduct a stability study on a diverse market sweep of BPO products and formulations.

40.     Valisure conducted an initial stability study of five (5) products using 37°C, 50°C, and 70°C; at each temperature, the results showed elevated benzene level greater than 2 ppm. These ranges from dozens of ppm to hundreds; at the highest temperature, the BPO product packaging burst.[12]

41.     Valisure next tested 66 acne treatment products containing BPO, incubating them at 50°C for 18 days, and measuring the benzene levels at days 0, 4, 10, 14, and 18. Every product demonstrated substantial instability of BPO and a propensity to form

---

[10] Id.

[11] Id. at 17.

[12] Id. at 15.

11

concerningly high levels of benzene in only 18 days.

42.    Included in Valisure's testing were several BPO Products manufactured by

Defendant, including a 2.5% Up & Up Cream (Acne Spot Treatment .75 oz) and 10% Up

& Up Gel (Maximum Strength Acne Medication 1 oz).

43.    Testing of each of these products revealed the presence of benzene.

**Figure 4A**



## E.    Defendant Did Not Adequately Test Its Products for Benzene.

44.    Defendant did not adequately test its Products before selling them to

Plaintiff, the Class, the Subclass, and the public. Defendant was required to follow current

good manufacturing practices ("CGMPs"), have scientifically sound specifications, and

must have test procedures and processes to ensure the Products' components (both active

and inactive ingredients), and finished products are safe. Both raw ingredient materials

and finished batches must be tested before released to the public to confirm that they

meet specifications for identity, strength, quality, and purity.[13] If testing results of either

---

[13] 21 C.F.R. § 211.84 (1978); see also 21 C.F.R. § 211.160 (1978).

the raw materials or the finished products do not conform with the specifications, the product cannot be sold to the public. Defendant must also re-test any Products which are subject to deterioration.[14]

45.    Defendant must also do stability testing to understand the "shelf life" of the Products and to assign an appropriate expiration date. It is well known that certain chemical ingredients can degrade or change because of environmental and storage conditions, such as light, moisture, temperature, and humidity, or simply do to the passage of time. The required stability testing should cover all expected distributor and consumer storage, handling, and use conditions and must be done using "reliable, meaningful, and specific test methods."[15] If stability testing finds a drug product is not stable under expected storage or use conditions, degrades, or creates toxic byproducts, the product cannot be sold to the public.

46.    The CGMPs and stability test requirements are there to ensure products are safe for public use. Therese are the minimum requirements. Because the manufacturers are self-regulated, the FDA—and the consumers of the products— must rely on drug manufacturers, the public, and concerned citizens to report unsafe products.

47.    Defendant knew or should have known that the BPO in its Products degrades to benzene. Defendant knew or should have known that, because the chemical

---

[14] 21 C.F.R. § 211.160(b)(1)(1978).
[15] 21 CFR 211.166.

nature of BPO is not stable and would degrade when exposed to the environmental temperatures found in normal distributor and consumer use, handling, and storage conditions.

48.    The degradation of BPO to benzene over time when exposed to heat has been well known for some time, and the process has been reported in the scientific literature as early as 1936.[16]

49.    The degradation of BPO to benzene was known or should have been known to Defendant, who promote itself as dedicated to science and research. Defendant markets itself as a world class acne drug researcher, developer, and manufacturer. Defendant employed high-level scientists, chemists, and researchers to formulate its drug products for public use. Defendant, with these resources and expertise, was aware of the well-known chemical processes through which the BPO in its products would degrade into benzene when exposed to common use temperatures and conditions.

50.    Defendant knew or should have known through its own research, development, formulation, manufacturing, and testing whether the BPO in its Products was chemically and physically stable. Defendant was required not only to adequately test the BPO Products for safety and stability before selling them to the public, but also to monitor its internal practices, processes, and specification to make sure they kept pace

---

[16] H. Erlenmeyer and W. Schoenauer, *Über die thermische Zersetzung von Di-acyl-peroxyden*, HELU. CHIM. ACTA, 19, 338 (1936).

with science and emerging methodologies. Defendant knew or should have known from expiration and stability studies examining the "shelf life" of the Products that the degradation of BPO to benzene took place because of normal and expected environmental, use, and storage conditions.

51.    Defendant knew or should have known the Products would be handled, used, and stored by distributors, sellers, and consumers under various temperatures that affect chemical stability. Defendant knew or should have known the Products would travel by commercial carriers and distributors in varying storage conditions and would be stored by consumers in handbags, backpacks, bathrooms, showers, lockers, and in vehicles during warm months where the Products would be exposed to heat.

52.    Defendant knew or should have known that consumers would apply the benzene contaminated Products to their faces and bodies and would also use the Products in heated showers as scrubs and washes. Defendant knew or should have known that the Products would be used and applied to the skin at normal body temperatures, and elevated temperatures following showers, baths, after physical activity, and after the Products sat in warm temperatures or hot vehicles.

53.    The storage, use, and handling conditions of the Products were known or should have been known to Defendant before its Products containing BPO were marketed and sold to Plaintiff, the Class, and Subclass members. Defendant knew or should have known that the BPO in these Products would degrade to benzene under

15

these conditions. Defendant further knew or should have known that, because of the known degradation of BPO to benzene, its Products with BPO were contaminated with benzene by the time they reached consumers, but they sold them to Plaintiff, the Class, the Subclass, and the public anyway and without any warning of the benzene contained within them.

54.    In 2020, the FDA started working with companies to identify benzene in products, which resulted in product recalls of hand sanitizers, sunscreens, and deodorants. Defendant were aware or should have been aware of benzene contamination in other BPO products on the market when they marketed and sold its Products to Plaintiff, the Class, the Subclass, and the Public, but did not test the Products for benzene contamination.

**F.    Defendant Exposed Plaintiff, the Class, and the Public to Benzene Without Their Knowledge or Consent.**

55.    Despite the fact that its Products contain benzene, Defendant did not list benzene among the Product's ingredients, on the Products' label or container, or anywhere in their advertising or on their websites. Defendant did not—and still does not—warn that the Products contain benzene, are at risk of benzene contamination, or that the product could cause consumers to be exposed to benzene even while the product remains sealed.

56.    As noted above, benzene is a known human carcinogen which is heavily regulated to protect human health, and should not be in drug products, especially ones

such as acne treatment which are used daily by children and teenagers for many years. FDA specifically prohibits benzene from being used to make products because any "benefit" it may impart is vastly outweighed by its toxicity and harmful environmental effects. FDA allows one exception to this otherwise blanket prohibition, and that is when the use of benzene in a product is unavoidable, and the product has significant therapeutic advantages for the consumer. Even in that rare instance, benzene in a product is restricted to 2 ppm. Defendant's acne treatment products do not meet this rare exception.

57.     Plaintiff, members of the Classes, and the Public were exposed to benzene from Defendant's BPO Products through inhalation and dermal absorption. Benzene can be absorbed into the body via inhalation, skin absorption, ingestion, and/or eye contact. Plaintiff and the Classes applied Defendant's BPO Products to areas of the skin including face, neck, chest, and back, often up to one to three times per day, and used the BPO Products as washes or scrubs in heated showers. Plaintiff and the Class were also exposed to benzene leaked from contaminated BPO Products.

58.     Defendant represented to the Plaintiff, the Class, the Subclass, and the Public that each of its Products had only the ingredients listed on the label and package but failed to identify benzene anywhere on the Products' labels, containers, or packaging.

59.     Defendant made many representations as to the safety of its products, and told its customers, including Plaintiff, the Class, the Subclass, and the Public, that

17

"Product safety is a basic expectation of our guests, and a priority for Target."[17]

60.    Defendant represented to Plaintiff, the Class, the Subclass, and the Public that it "Put[] Safety First" and that "Product and food safety is a top priority and we make sure our products and how they are produced meet or exceed mandatory safety standards."[18]

61.    Defendant represented that it "require[s] Target-brand vendors to test beyond regulatory requirements and take special care with children's products . . . ."[19]

62.    Defendant knew that its BPO Products would be marketed to and used by teenagers. In response to a question by a consumer regarding whether its Acne Spot Treatment .75oz product was appropriate for teenagers, an employee of Defendant responded that "[t]his product is okay for teenagers . . . ."[20]

63.    Defendant has represented that its products are thoroughly tested before being sold: "We expect our vendors to comply with good manufacturing practices or documented manufacturing and quality processes. We also require Target-brand products be tested at third-party testing labs."[21]

---

[17]https://corporate.target.com/sustainability-governance/operating-ethically/product-safety-quality-assurance/product-safety (last accessed April 30, 2024).
[18]https://corporate.target.com/sustainability-governance/operating-ethically/product-safety-quality-assurance (last accessed April 30, 2024).
[19] *Id.*
[20]https://www.target.com/p/acne-spot-treatment-75oz-up-38-up-8482/-/A-51247402?showOnlyQuestions=true (last accessed April 30, 2024).
[21]https://corporate.target.com/sustainability-governance/operating-ethically/product-safety-quality-assurance (last accessed April 30, 2024).

64.     Defendant also represented that it takes extra steps to ensure that its products are safe: "We have tools and processes in place to address product safety . . . at every stage of production. Before production starts, we audit the factory and meet with the vendor and manufacturer. We require vendors to test Target-brand products at third-party laboratories throughout production. A Target-brand product must pass all testing before it's approved for shipment."[22]

65.     Defendant's statements about the BPO Products' ingredients were false, deceptive, and misleading. Defendant's statements were meant to convey to Plaintiff, the Class, the Subclass, and the public the message that the BPO Products were safe and did not contain carcinogens, such as benzene. Defendant made these statements and omitted benzene from all advertising, labeling, and packaging when they knew or should have known the statements were false, misleading, and deceptive. Reasonable consumers, relying on Defendant's statements reasonably believed the BPO Products were safe and did not contain benzene.

### PLAINTIFF-SPECIFIC ALLEGATIONS

66.     More than once within the last year, Plaintiff, for her personal use, purchased a BPO product made and sold by Target under the Up & Up brand including, at least, the 10% BPO maximum strength Acne Spot Treatment product. Plaintiff made such purchases more than a year ago, too.

---

[22] *Id.*

67.    Plaintiff purchased the BPO Products in Texas for many years, including within the last year. She consistently applied the Acne Spot Treatment twice a day for approximately the last two years.

68.    At the time of purchasing the BPO Products, Defendant knew the Product did or would contain benzene.

69.    Defendant withheld the information concerning the inclusion and/or risk of degradation into benzene to induce Plaintiff into purchasing the BPO Product.

70.    Plaintiff never would have purchased Defendant's BPO Products had Defendant warned about the presence of benzene or that its products could degrade into benzene.

71.    She has suffered economic damages as a result of Defendant's breaches and wrongful conduct, as alleged, including (but not limited to) its violations of the consumer protection laws alleged herein.

72.    Prior to filing this Complaint, Plaintiff, for herself and for the Proposed Class, served notice on the Defendant that it had breached warranties associated with its BPO Products, and that it had done so for the reasons alleged in this Complaint.

73.    Plaintiff brings these claims for herself, on behalf of a national class, and for subclass of similarly situated persons in Texas who purchased the BPO Products.

## EQUITABLE TOLLING OF STATUTES OF LIMITATIONS, CONCEALMENT, AND ESTOPPEL

74.     Each purchase of a BPO Product constitutes a separate act that triggers anew the relevant statute of limitations.

75.     Additionally, any applicable statutes of limitation have been tolled by (1) the delayed discovery doctrine, as Plaintiff and the putative class members (defined below) did not and could not—through no fault or lack of diligence—reasonably have discovered Defendant's conduct alleged herein until shortly before the filing of this Complaint; and (2) the fraudulent concealment doctrine due to Defendant's knowing, purposeful, and active concealment and denial of all facts alleged herein including but not limited to its knowledge that the BPO contained in its Products degrades to benzene.

76.     Defendant had exclusive knowledge that its BPO Products contained benzene and deceptively marketed its BPO Products to Plaintiff, members of the Class, members of the Subclass, and the public.

77.     Under the circumstances, Defendant had a duty to disclose the nature, significance, and consequences of the benzene contained in its BPO Products. Accordingly, Defendant is estopped from relying upon any statute of limitations.

## CLASS ACTION ALLEGATIONS

78.     Plaintiff brings this case on behalf of herself, and all others similarly situated pursuant to Minnesota Rules of Civil Procedure Rule 23.01, 23.02(b), and 23.02(c). Plaintiff seeks to represent consumers who bought Defendant's BPO Products.

79.     The Class does not seek damages for physical injuries, although each Plaintiff was physically harmed by being exposed to benzene.

80.     Plaintiff seeks certification of the following classes against Defendant:

**Nationwide Class**. All consumers who purchased, for personal, family, or household use and consumption and not for resale, the BPO Products within the United States.

**Texas Class**. All consumers who purchased for personal use and consumption and not resale, the BPO Products in the State of Texas.

81.     Excluded from this Class and Subclass are Defendant, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors, and affiliated companies; Class counsel and their employees; and judicial officers and their immediate families as court staff assigned to the case.

82.     This action has been brought and may be properly maintained as a Class Action under Rule 23 of the Minnesota Rules of Civil Procedure because there is a well-defined community of interest and each of the proposed Classes meet the class action requirements under Rule 23 of numerosity, commonality, typicality, and adequacy of representation.

83.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself, and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved.

84.     **Numerosity**. The members of each Class are so numerous that joinder of all

22

members of the Class Is impracticable. Plaintiff believes there are millions of Class members throughout the United States, and there are tens of thousands of Texas Class members. The precise number of Class members is unknown to Plaintiff at this time.

85.    **Commonality/Predominance**. There are questions of law and fact common to all Class members that predominate over questions which affect only individual Class members. All Class members were deceived and misled by Defendant through the same advertising, online representations, labeling, and packaging, which do not mention benzene and misrepresent the characteristics, ingredients, and safety of the BPO Products. All Class members bought Defendant's BPO Products and have suffered an economic loss because of Defendant's deceptions and omissions. Thus, there is a well-defined community of interest in the questions of law and facts common to all Class members. Other common questions of law and fact in this dispute include, without limitation:

a.   Whether Defendant's BPO Products degrade to benzene under common distributor and consumer handling, use, and storage conditions.

b.   Whether Defendant tested the BPO Products for benzene before selling them to Plaintiff, the Class, and the public.

c.   When Defendant knew or should have known the BPO Products degraded to benzene.

d.   When Defendant knew or should have known the BPO Products contain benzene.

e.   Whether Defendant's advertising omitting benzene was deceptive, fraudulent, or unfair.

f. Whether Defendant's advertising omitting benzene was likely to deceive reasonable consumers.

g. Whether Defendant's conduct violated the consumer protection laws of each state, the District of Columbia, and Puerto Rico.

h. Whether Defendant breached the express and implied warranties made about its BPO Products.

i. Whether Defendant was unjustly enriched by the Plaintiff, the proposed Class, and Subclass members' purchase of the BPO Products.

j. Whether the Plaintiff, the proposed Class, and Subclass have been injured and if so, what is the proper measure of damages.

k. Whether the Plaintiff, the proposed Class, and Subclass have the right to economic damages including compensatory, exemplary, and statutory remedies for Defendant's misconduct.

l. Whether the Plaintiff, the proposed Class, and Subclass have the right to injunctive, declaratory, or other equitable relief and attorneys' fees.

86. **Typicality**. Plaintiff's claims are typical of the claims of the Classes because the claims arise from the same course of misconduct by Defendant, i.e., Defendant's false and misleading advertising and its failure to disclosure benzene in the Products. The Plaintiff, and all Class members were all exposed to the same uniform and consistent advertising, labeling, and packaging statements Defendant made about the Products. Because of the Defendant's misconduct, Plaintiff, like all Class members, were damaged and have incurred economic loss because of buying the Products believed to be safe. The claims of Plaintiff are typical of Classes.

87. **Adequacy**. Plaintiff will fairly and adequately represent and protect the interests of all Class members. Plaintiff has no interests antagonistic to the Class

24

members. Plaintiff hired attorneys experienced in the prosecution of consumer Class
Actions and Plaintiff intends to prosecute this action vigorously. Plaintiff anticipates no
difficulty in the management of this litigation as a Class Action.

88.    **Superiority.** Finally, this Class Action is proper under Rule 23.02(c)
because, under these facts, a Class Action is superior to other methods and is the most
efficient method for the fair and efficient adjudication of the dispute. The Class members
have all suffered economic damages because of Defendant's deceptive trade practices,
false advertising, and omissions of material health and safety information. Because of the
nature of the individual Class members' claims and the cost of the Products, few, if any
individuals, would seek legal redress against Defendant because the costs of litigation
would far exceed any potential economic recovery. Absent a Class Action, individuals
will continue to suffer economic losses for which they would have no remedy, and
Defendant will unjustly continue its misconduct with no accountability while retaining
the profits of its ill-gotten gains. Even if separate cases could be brought by individuals,
the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense
for the Court and the litigants, as well as create a risk of inconsistent rulings across the
country, which might be dispositive of the interests of individuals who are not parties. A
class action furthers the important public interest of containing legal expenses, efficiently
resolving many claims with common facts in a single forum simultaneously, and without
unnecessary duplication of effort and drain on critical judicial resources. The class action

method presents far fewer management difficulties than individual cases filed nationwide and provides the benefit of comprehensive supervision by a single court.

89.    The Classes also may be certified because Defendant has acted or refused to act on grounds applicable to the Classes, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

90.    Plaintiff seeks preliminary and permanent injunctive on behalf of the Classes, on grounds generally applicable to the entire Classes, to enjoin Defendant to (1) purge any existing inventory of BPO intended for the use in products in its health and beauty category of consumers goods; (2) adopt new testing protocols requiring testing for the presence of benzene at no more than 1 part per million (PPM) in products in its health and beauty category of consumers goods; (3) engage an independent, ISO-certified laboratory to test for benzene in random samples from at least 25% of manufactured lots in products in its health and beauty category of consumers goods; and (4) make those tests available to the Plaintiff and Class..

91.    Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## CAUSES OF ACTION

### COUNT I: BREACH OF EXPRESS WARRANTY
*On behalf of the Nationwide Class and Texas Class*

92.     Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

93.     Plaintiff brings this cause of action on behalf of herself, and all members of the Nationwide Class and the Texas Class, all of whom are similarly situated consumers.

94.     Plaintiff, and each member of the Classes, formed a contract with Defendant at the time Plaintiff and the other Class Members purchased the BPO Products. The terms of the contract include the promises and affirmations of fact made by Defendant on the BPO Products' packaging and through marketing and advertising, specifically that the BPO Products were safe to use and did not contain any benzene. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and Class members, on the one hand, and Defendant, on the other hand.

95.     Defendant expressly warranted that its BPO Products were fit for ordinary use, were merchantable, and were not misbranded. Defendant's express warranties were reflected in each BPO Product's labeling, promotions, and marketing material, all of which uniformly identified BPO as the active ingredient and none of them identified benzene as an ingredient in Defendant's products. Defendant's product labeling and other materials were required to be truthful, accurate, and non-deceptive, but this was

not the case as Defendant failed to disclose Plaintiff and Class members that its BPO Products contained benzene.

96.     At all times relevant all fifty states and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2- 313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A-2-313; Va. Code§ 8.2- 313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313; and Wyo. Stat. § 34.1-2-313.

97.    The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise. Defendant advertised and sold the Products as safe, pure, of good quality, and only containing the listed ingredients. Defendant's advertising, labels, containers, packaging, advertising, and online statements did not mention benzene, leading consumers to believe the Products were safe for their ordinary use. Defendant's affirmations were uniformly made to Plaintiff and the Subclass members by Defendant in the Products' advertising, labeling, packaging, and online statements and were part of the basis of the bargain between Defendant, Plaintiff, and Class members.

98.    Defendant's affirmations and promises are unlawful. When Defendant marketed, distributed, and sold the Products, Defendant knew, or should have known, the Products degraded to benzene under normal and expected use, handling, and storage conditions. Defendant knew, or should have known, the Products formed benzene and therefore did not conform to Defendant's express representations and warranties to consumers. Plaintiff and Class members purchased the Products in reasonable reliance on Defendant's statements.

99.    Defendant breached its express warranty because Defendant's BPO Products were not of merchantable quality, not fit for the product's ordinary purpose, and did not conform to the standards generally applicable to such goods.

100.    Plaintiff has provided Defendant with notice of its breach of warranty on behalf of herself and all others similarly situated.

101.    Plaintiff and the Class members were reasonably expected purchasers of the misbranded and deceptively labeled BPO Products.

102.    Because of Defendant's misconduct and breach of the express warranty, Plaintiff, on behalf of herself and the Classes, seek recovery of their economic damages, attorneys' fees, punitive damages, restitution, and all other relief allowable by law, including an injunction to enjoin Defendant from continuing its fraudulent business practices. The damages sought are ascertainable, uniform to the Class and can be measured and returned to the Class members.

## COUNT II: BREACH OF IMPLIED WARRANTY
*On behalf of the Nationwide Class and Texas Class*

103.    Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

104.    Plaintiff brings this cause of action on behalf of herself, and all members of the Nationwide Class and the Texas Class, all of whom are similarly situated consumers.

105.    Plaintiff, and the Class members, formed a contract with Defendant at the time Plaintiff and the other Class Members purchased the BPO Products. The terms of the contract include the promises and affirmations of fact made by Defendant on the BPO Products' packaging and through marketing and advertising, specifically that the BPO Products were safe to use and did not contain any benzene. This labeling, marketing, and

advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the Class members, on the one hand, and Defendant, on the other hand.

106.    At all times relevant all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability and fitness for ordinary purpose: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. Art. § 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann.§ 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2- 314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann.

31

9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

107.    Defendant was a merchant within the meaning of the above statutes.

108.    Defendant's BPO Products constituted "goods" or the equivalent within the meaning of the above statutes. Defendant placed its BPO Products in sealed packaging or other closed containers and placed them on the market.

109.    Defendant, as sellers of the Products, made implied warranties including warranting the Products were of the same quality and purity represented on the labels, in advertising, and on Defendant's websites and in advertising. Defendant represented the Products were fit for the ordinary purpose and conformed to the promises made on the containers, labels, advertising, and websites that all ingredients were listed, and all warnings given.

110.    Defendant advertised its Products as safe, when they knew, or should have known, the Products degraded to benzene. Defendant did not list benzene as an ingredient or contaminant anywhere on the Products or advertising. The Products are not of the quality and purity represented by Defendant because the Products degrade to benzene under normal use, handling, and storage conditions.

111.    Defendant breached its implied warranty because Defendant's BPO Products were not of merchantable quality, not fit for the product's ordinary purpose, and did not conform to the standards generally applicable to such goods.

32

112.    Plaintiff has provided Defendant with notice of its breach of warranty on behalf of herself and all others similarly situated.

113.    Defendant did not tell Plaintiff and the Class members the Products were not fit for their ordinary use because the Products, as advertised and sold by Defendant, degraded to benzene under normal and expected handling, use, and storage.

114.    Defendant's affirmations that the Products were safe for use were uniformly made to the Plaintiff and the Class members in the Products' advertising, labeling, and packaging, and on Defendant's websites, which were part of the basis of the bargain.

115.    Plaintiff and the Class members purchased the Products in reasonable reliance on Defendant's statements, affirmations, and omissions of material health and safety information.

116.    Defendant's BPO Products did not fulfill their intended purpose as, instead of purchasing a safe treatment for acne, Plaintiff and the Class members received products containing benzene, a dangerous human carcinogen.

117.    Defendant's implied warranties were reflected in each BPO Product's labeling, promotions, and marketing material, all of which uniformly identified BPO as the active ingredient and none of them identified benzene as an ingredient in Defendant's products. Defendant's product labeling and other materials were required to be truthful, accurate, and non-deceptive, but this was not the case as Defendant failed to disclose

33

Plaintiff and the Class members that its BPO Products contained benzene.

118.    Plaintiff and the Class members were the intended third-party beneficiary recipients of all arrangements Defendant had with downstream resellers of Defendant's BPO Products. Plaintiff and each of the Class members were those whose benefit any promises, affirmations, or warranties were made by Defendant concerning the BPO Products, as they were the end purchasers of Defendant's BPO Products, which Defendant knew by virtue of its position as manufacturer and seller of the BPO Products.

119.    Defendant's acts and omissions are ongoing and continuing to cause harm.

120.    As a direct and proximate result of Defendant's misconduct, Plaintiff, on behalf of herself and the Class members, seek recovery of their actual damages, injunctive relief, attorneys' fees, punitive damages, and all other relief allowable under the law. The damages sought are uniform to the Classes and the actual damages can be measured and returned to consumers who bought Defendant's Products.

## COUNT III: UNJUST ENRICHMENT
*On behalf of the Nationwide Class and Texas Class*

121.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

122.    Plaintiff brings this cause of action on behalf of herself, and all of the Class members, all of whom are similarly situated consumers.

123.    Defendant has unjustly profited from its deceptive business practices and kept the profits from Plaintiff and the Class members who purchased the Products.

34

124.    Defendant requested and received a measurable economic benefit at the expense of Plaintiff and the Class members as payment for the Products. Defendant accepted the economic benefits knowing the economic benefit received was based on deception and omission of material human health and safety information.

125.    There is no utility in Defendant's misconduct and Defendant's enrichment from the misconduct is unjust, inequitable, unconscionable, and against the strong public policy to protect consumers against fraud.

126.    Because of Defendant's misconduct, Plaintiff, on behalf of herself and the Class members, and the public seek recovery of their actual damages, disgorgement of profits, injunctive relief, attorneys' fees, punitive damages, and all other relief allowable under the law. The damages sought are uniform to the Classes and the actual damages can be measured and returned to consumers who bought Defendant's Products.

## COUNT IV: FRAUD
*On behalf of the Nationwide Class and Texas Class*

127.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

128.    Defendant affirmatively misrepresented material facts, including, *inter alia,* the fact that that its BPO Products contained benzene.

129.    Defendant omitted material facts including, *inter alia,* that its BPO Products contained benzene.

130.    Defendant's actions had the effect of fraudulently inducing customers—

35

including Plaintiff and the Class members—to pay for Defendant's BPO Products, which Defendant knew or should have known contained a human carcinogen, benzene, and were misbranded. Plaintiff and the Classes would not have purchased Defendant's BPO Products had they known the truth. Indeed, Plaintiff and the Class members *could not* have purchased Defendant's BPO Products, because the inclusion of benzene renders those products as illegally manufactured, imported, distributed, and sold.

131.    Defendant knowingly, or at least recklessly, represented that its BPO Products did not contain benzene through their labeling, marketing, advertising, and promotion.

132.    Defendant knew, or reasonably should have known, that its misrepresentations were materially false or misleading, or that the omission of material facts rendered such representations false or misleading.

133.    Defendants knew, or had reason to know, that its misrepresentations and omissions would induce Plaintiff and the Class members to purchase Defendant's BPO Products.

134.    Defendant's misrepresentations and omissions were material.

135.    Defendant actively concealed its misrepresentations and omissions from Plaintiff, the Class members, and the public.

136.    Defendant intended its misrepresentations and omission to induce Plaintiff and the Class members to purchase Defendant's BPO Products.

36

137.    But for these misrepresentations and omissions, Plaintiff and the Class members would not have purchased Defendant's BPO Products.

138.    To the extent applicable, Plaintiff and the Class members were justified in relying on Defendant's misrepresentations and omissions. The same or substantively identical misrepresentations and omissions were communicated to each of the Class members through, *inter alia*, product labeling and packaging, as well as Defendant's marketing and promotional material. No reasonable consumer would have purchased Defendant's BPO Products but for Defendant's unlawful conduct. To the extent applicable, reliance may be presumed in these circumstances.

139.    Plaintiff and the Class members were damaged by reason of Defendant misrepresentations and omissions alleged herein.

140.    Defendant intended its misrepresentations or omissions to induce Plaintiff and the Class members to purchase Defendant's BPO Products or had reckless disregard for the same.

141.    As a direct and proximate result of Defendant's acts and omissions described herein, Plaintiff and the Class members have suffered harm and will continue to do so.

142.    Defendant's misrepresentations or omissions were material and a substantial factor in the decision of Plaintiff and the Class members to purchase Defendant's BPO Products.

37

143.  Defendant intended its misrepresentations or omissions to induce Plaintiff and the Class members to purchase its BPO Products or had reckless disregard for same.

144.  But for these misrepresentations (or omissions), Plaintiff and the Class members would not have made purchases of Defendant's BPO Products.

145.  To the extent applicable, Plaintiff and the Class members were justified in relying on each of Defendant's misrepresentations and omissions. The same or substantively identical misrepresentations and omissions were communicated to each member of the Classes through, *inter alia*, product labeling and packaging, as well as Defendant's marketing and promotional material. No reasonable consumer would have purchased Defendant's BPO Products but for Defendant's unlawful conduct. To the extent applicable, reliance may be presumed in these circumstances.

146.  Plaintiff and the Class members were damaged by reason of Defendant's misrepresentations or omissions alleged herein.

### COUNT V: NEGLIGENT MISREPRESENTATION AND OMISSION
*On behalf of the Nationwide Class and Texas Class*

147.  Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

148.  Defendant had or undertook a duty to accurately represent the ingredients of its BPO Products.

149.  Defendant failed to exercise ordinary care in making representations (or in failing to disclose facts) concerning the ingredients of its BPO Products.

38

150.    Defendant negligently misrepresented or omitted facts regarding the ingredients of its BPO Products.

151.    Defendant's misrepresentations or omissions regarding the ingredients of its BPO Products occurred in the products' labeling and packaging as well as in the marketing and promotional material for its BPO Products.

152.    Defendant's statements were false at the time the misrepresentations were made (or at the time omissions were not made).

153.    Defendant knew, or reasonably should have known, that its representations alleged herein were materially false or misleading, or that omissions of material facts rendered such representations false or misleading. Defendant also knew, or had reason to know, that its misrepresentations and omissions would induce Plaintiff and the Class members to purchase its BPO Products.

### COUNT VI: VIOLATIONS OF STATE CONSUMER PROTECTION LAWS
*On behalf of the Nationwide Class and Texas Class*

154.    Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

155.    Defendant violated the consumer protection statutes as follows:

   a.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, et seq.;

   b.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, et seq.;

   c.    Defendant engaged in unfair competition or unfair or deceptive acts or

39

practices in violation of Arizona Rev. Stat. § 44-1522, et seq.;

d.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, et seq.;

e.   Defendant violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus. Prof. Code § 17200, et seq.;

f.   Defendant violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.;

g.   Defendant violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.

h.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, et seq.;

i.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, et seq.;

j.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, et seq.;

k.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, et seq.;

l.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, et seq.;

m.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, et seq.;

n.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, et seq.;

o.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, et seq.;

p.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation 815 ILCS 505/1, et seq.;

q.   Defendant engaged in unfair competition or unfair or deceptive acts or

practices in violation of Ind. Code Ann. § 24-5-0.5.1, et seq.;

r.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code Ann. § 714H, et seq.;

s.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, et seq.;

t.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, et seq.;

u.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, et seq.;

v.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, et seq.;

w.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, et seq.;

x.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, et seq.;

y.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, et seq.;

z.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.44, et seq.;

aa.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, et seq.;

bb.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Mo. Rev. Stat. § 407.0 10, et seq.;

cc.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, et seq.;

dd.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, et seq.;

ee.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, et seq.;

41

ff.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, et seq.;

gg. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, et seq.;

hh. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, et seq.;

ii.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, et seq.;

jj.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 350, et seq.;

kk. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, et seq.;

ll.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, et seq.;

mm.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, et seq.

nn. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751, et seq.;

oo. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, et seq.;

pp. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, et seq.;

qq. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, et seq.;

rr.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, et seq.;

ss.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, et seq.;

tt.  Defendant engaged in unfair competition or unfair or deceptive acts or

practices in violation of Tenn. Code § 47-18-101, et seq.;

uu. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, et seq.;

vv. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, et seq.;

ww.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2451, et seq.;

xx. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, et seq.;

yy. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, et seq.;

zz. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, et seq.;

aaa. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, et seq.;

bbb.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, et seq.; and

ccc. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 23 L.P.R.A. § 1001, et seq., the applicable statute for the Commonwealth of Puerto Rico.

156.    Defendant's conduct constitutes trade or commerce or other actionable activity within the meaning of the above statutes.

157.    Plaintiff and the Class members are consumers or person aggrieved by Defendant's misconduct within the meaning of the above statutes.

158.    Defendant's conduct as alleged herein—to wit, knowingly concealing or failing to disclose the presence of benzene in its BPO Products—constitutes unfair,

43

deceptive, misleading, or otherwise actionable practices as to Defendant's conduct concerning the presence of benzene in its BPO Products.

159.    Plaintiff has provided Defendant with notice of her claim on behalf of herself and all others similarly situated.

160.    Defendant marketed and sold its BPO Products throughout Minesota and throughout the nation. Defendant marketed and sold its BPO Products to the public at large. This case advances the State's interests and enforcement of Plaintiff's claims would be a public benefit.

161.    To the extent applicable, Plaintiff and the Class members were justified in relying on each Defendant's misrepresentations and omissions. The same or substantively identical misrepresentations and omissions were communicated to each of the Class members through, *inter alia*, product labeling and packaging, as well as Defendant's marketing and promotional material. No reasonable consumer would have purchased Defendant's BPO Products but for Defendant's unlawful conduct. To the extent applicable, reliance may be presumed in these circumstances.

162.    As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the Class members seek recovery of their economic damages, attorneys' fees, punitive damages, restitution, and all other relief allowable by law, including an injunction to enjoin Defendant from continuing its fraudulent business practices. The damages sought are ascertainable,

44

uniform to the Classes, and can be measured and returned to the Class members.

## PRAYER FOR RELIEF

For these reasons, Plaintiff prays for the following judgment:

      A.      An order certifying this action as a class action;

      B.      An order appointing Plaintiff as Class Representative, and appointing undersigned counsel as Class Counsel to represent the Classes;

      C.      A declaration that Defendant is liable under each and every one of the above enumerated causes of action;

      D.      An order awarding appropriate preliminary and/or final injunctive relief against the conduct of Defendant described above;

      E.      Payment to Plaintiff and Class Members of all damages, exemplary or punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including but not limited to the full amounts paid for the BPO Products; and/or the costs to replace or return the BPO Products;

      F.      An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class members;

      G.      An award of statutory penalties to the extent available;

      H.      Interest as provided by law, including but not limited to pre-judgment and post judgment interest as provided by rule or statute; and

      I.      Such other and further relief as this Court may deem just, equitable, or proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all Counts and as to all issues.

## ACKNOWLEDGMENT

The undersigned acknowledge sanctions may be imposed under Minn. Stat. § 549.211.

Dated: May 17, 2024                    Respectfully submitted,

**SCHWEBEL GOETZ & SIEBEN, P.A.**
*/s/ Alicia N. Sieben*
Alicia N. Sieben (#389640)
5120 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2246
Telephone:  612-377-7777
asieben@schwebel.com


W. Lewis Garrison, Jr. *(pro hac forthcoming)*
Christopher Hood *(pro hac forthcoming)*
Mark Ekonen *(pro hac forthcoming)*
Heninger Garrison Davis, LLC
2224 1st Avenue N
Birmingham, Alabama 35203
Tel: (205) 326-3336
Fax: 205-380-8085
Lewis@hgdlawfirm.com
CHood@hgdlawfirm.com
Mark@hgdlawfirm.com


Richard M. Paul III *(pro hac forthcoming)*
Ashlea G. Schwarz *(pro hac forthcoming)*
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com

**Attorneys for Plaintiff and Proposed Class**

46

practices in violation of Arizona Rev. Stat. § 44-1522, et seq.;

d.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, et seq.;

e.  Defendant violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus. Prof. Code § 17200, et seq.;

f.  Defendant violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.;

g.  Defendant violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.

h.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, et seq.;

i.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, et seq.;

j.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, et seq.;

k.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, et seq.;

l.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, et seq.;

m.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, et seq.;

n.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, et seq.;

o.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, et seq.;

p.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation 815 ILCS 505/1, et seq.;

q.  Defendant engaged in unfair competition or unfair or deceptive acts or

practices in violation of Ind. Code Ann. § 24-5-0.5.1, et seq.;

r.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code Ann. § 714H, et seq.;

s.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, et seq.;

t.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, et seq.;

u.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, et seq.;

v.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, et seq.;

w.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, et seq.;

x.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, et seq.;

y.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, et seq.;

z.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.44, et seq.;

aa.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, et seq.;

bb.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Mo. Rev. Stat. § 407.0 10, et seq.;

cc.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, et seq.;

dd.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, et seq.;

ee.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, et seq.;

ff. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, et seq.;

gg. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, et seq.;

hh. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, et seq.;

ii. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, et seq.;

jj. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 350, et seq.;

kk. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, et seq.;

ll. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, et seq.;

mm. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, et seq.

nn. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751, et seq.;

oo. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, et seq.;

pp. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, et seq.;

qq. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, et seq.;

rr. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, et seq.;

ss. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, et seq.;

tt. Defendant engaged in unfair competition or unfair or deceptive acts or

42

practices in violation of Tenn. Code § 47-18-101, et seq.;

uu. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, et seq.;

vv. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, et seq.;

ww.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2451, et seq.;

xx. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, et seq.;

yy. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, et seq.;

zz. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, et seq.;

aaa. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, et seq.;

bbb.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, et seq.; and

ccc. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 23 L.P.R.A. § 1001, et seq., the applicable statute for the Commonwealth of Puerto Rico.

156.    Defendant's conduct constitutes trade or commerce or other actionable activity within the meaning of the above statutes.

157.    Plaintiff and the Class members are consumers or person aggrieved by Defendant's misconduct within the meaning of the above statutes.

158.    Defendant's conduct as alleged herein—to wit, knowingly concealing or failing to disclose the presence of benzene in its BPO Products—constitutes unfair,

43

deceptive, misleading, or otherwise actionable practices as to Defendant's conduct concerning the presence of benzene in its BPO Products.

159.    Plaintiff has provided Defendant with notice of her claim on behalf of herself and all others similarly situated.

160.    Defendant marketed and sold its BPO Products throughout Minesota and throughout the nation. Defendant marketed and sold its BPO Products to the public at large. This case advances the State's interests and enforcement of Plaintiff's claims would be a public benefit.

161.    To the extent applicable, Plaintiff and the Class members were justified in relying on each Defendant's misrepresentations and omissions. The same or substantively identical misrepresentations and omissions were communicated to each of the Class members through, *inter alia*, product labeling and packaging, as well as Defendant's marketing and promotional material. No reasonable consumer would have purchased Defendant's BPO Products but for Defendant's unlawful conduct. To the extent applicable, reliance may be presumed in these circumstances.

162.    As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the Class members seek recovery of their economic damages, attorneys' fees, punitive damages, restitution, and all other relief allowable by law, including an injunction to enjoin Defendant from continuing its fraudulent business practices. The damages sought are ascertainable,

44

uniform to the Classes, and can be measured and returned to the Class members.

## PRAYER FOR RELIEF

For these reasons, Plaintiff prays for the following judgment:

      A.     An order certifying this action as a class action;

      B.     An order appointing Plaintiff as Class Representative, and appointing undersigned counsel as Class Counsel to represent the Classes;

      C.     A declaration that Defendant is liable under each and every one of the above enumerated causes of action;

      D.     An order awarding appropriate preliminary and/or final injunctive relief against the conduct of Defendant described above;

      E.     Payment to Plaintiff and Class Members of all damages, exemplary or punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including but not limited to the full amounts paid for the BPO Products; and/or the costs to replace or return the BPO Products;

      F.     An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class members;

      G.     An award of statutory penalties to the extent available;

      H.     Interest as provided by law, including but not limited to pre-judgment and post judgment interest as provided by rule or statute; and

      I.     Such other and further relief as this Court may deem just, equitable, or proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all Counts and as to all issues.

# ACKNOWLEDGMENT

The undersigned acknowledge sanctions may be imposed under Minn. Stat. § 549.211.

Dated: May 17, 2024                    Respectfully submitted,

                                       **SCHWEBEL GOETZ & SIEBEN, P.A.**
                                       */s/ Alicia N. Sieben*
                                       Alicia N. Sieben (#389640)
                                       5120 IDS Center
                                       80 South Eighth Street
                                       Minneapolis, Minnesota 55402-2246
                                       Telephone: 612-377-7777
                                       asieben@schwebel.com


                                       W. Lewis Garrison, Jr. (*pro hac forthcoming*)
                                       Christopher Hood (*pro hac forthcoming*)
                                       Mark Ekonen (*pro hac forthcoming*)
                                       Heninger Garrison Davis, LLC
                                       2224 1st Avenue N
                                       Birmingham, Alabama 35203
                                       Tel: (205) 326-3336
                                       Fax: 205-380-8085
                                       Lewis@hgdlawfirm.com
                                       CHood@hgdlawfirm.com
                                       Mark@hgdlawfirm.com


                                       Richard M. Paul III (*pro hac forthcoming*)
                                       Ashlea G. Schwarz (*pro hac forthcoming*)
                                       **PAUL LLP**
                                       601 Walnut Street, Suite 300
                                       Kansas City, Missouri 64106
                                       Telephone: (816) 984-8100
                                       Rick@PaulLLP.com
                                       Ashlea@PaulLLP.com


                                       **Attorneys for Plaintiff and Proposed Class**

46